UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| versus | : | CRIMINAL NO. 15-16-BAJ-SCR |
| | : | |
| BARBARA A. SADLER | : | |

**PLEA AGREEMENT**

1.

The Office of the United States Attorney for the Middle District of Louisiana, and the Fraud Section of the Criminal Division of the Department of Justice (hereinafter collectively referred to as the "Department of Justice"), by and through the undersigned counsel, and the above-named defendant, BARBARA A. SADLER (hereinafter referred to as the "defendant"), agree that the defendant will plead guilty to Count One of the Superseding Indictment charging her with conspiring to commit health care fraud and wire fraud, in violation of Title 18, United States Code, Section 1349. The defendant further agrees to admit to the forfeiture allegation in the Superseding Indictment.

2.

The Department of Justice and the defendant agree that, if the Court accepts the guilty plea, the Department of Justice will not file additional criminal charges related to the violations contained in the Superseding Indictment against the defendant in this district.

3.

The defendant agrees to provide complete and truthful information to any law enforcement agent or attorney of the United States and at any grand jury proceeding or trial. The defendant waives her Fifth Amendment privilege against self-incrimination. This Plea Agreement, however, is not conditioned upon any obligation of the United States to receive, or act upon, information which the defendant may now or in the future provide or stand ready to provide.

4.

The Department of Justice agrees to inform the Court of the defendant's actions pursuant to this Plea Agreement. The Department of Justice, however, is not obliged, as a condition of this Plea Agreement, to file any motion with the Court, either for a downward departure under Section 5K1.1 of the United States Sentencing Guidelines, or to reduce the defendant's sentence under Rule 35 of the Federal Rules of Criminal Procedure. If a motion is filed, the Court, in its discretion, may or may not reduce the sentence below the guidelines range otherwise applicable.

5.

Except as otherwise provided herein, no truthful testimony or other information provided by the defendant pursuant to this Plea Agreement, or any information derived therefrom, will be used against the defendant in any criminal trial, unless the defendant breaches this Plea Agreement by failing to plead guilty as agreed, providing false information, failing to provide full and complete cooperation, or violating the terms of this Plea Agreement in any other manner. In the event of such a breach, any information provided by the defendant, and any information derived therefrom, may be used against the defendant in this or any other

prosecution. Such information includes, but is not limited to, the Plea Agreement itself, the factual basis offered to support the defendant's guilty plea, the defendant's admission to the factual basis, and any other information provided by the defendant. In addition, in the event of such a breach, the defendant may be prosecuted for any offense covered by this Plea Agreement.

6.

If the defendant refuses to provide truthful information or testimony, or provides false or misleading information or testimony, she may, after a judicial finding of such, be prosecuted for any offense covered by this agreement, and all statements and information provided by the defendant may be used against her. The defendant's plea of guilty may not be withdrawn.

7.

The defendant agrees to fully and truthfully complete the financial statement provided to her by the Department of Justice and to return the financial statement to the undersigned attorney for the United States within ten (10) days of this agreement being filed with the Court. Further, upon request, she agrees to provide the Department of Justice with any information or documentation in her possession regarding her financial affairs and agrees to submit to a debtor's examination when requested. The defendant agrees to provide this information whenever requested until such time as any judgment or claim against her, including principal, interest, and penalties is discharged or satisfied in full. This information will be utilized to evaluate her capacity to pay the government's claim or judgment against her, whatever that claim or judgment may be, including, but not limited to forfeiture and restitution.

8.

The defendant also agrees that the defendant shall assist the Department of Justice in all proceedings, whether administrative or judicial, involving the forfeiture to the United States of all rights, title, and interest, regardless of their nature or form, in the assets that the defendant has agreed to forfeit, and any other assets, including real and personal property, cash and other monetary instruments, wherever located, which the defendant has accumulated as a result of illegal activities. Such assistance will involve an agreement on the defendant's part to the entry of an order enjoining the transfer or encumbrance of assets which may be identified as being subject to forfeiture, including but not limited to those specific real and personal properties set forth in the forfeiture allegations of the Superseding Indictment. Additionally, the defendant agrees to identify as being subject to forfeiture all such assets, and to assist in the transfer of such property to the United States by delivery to the Department of Justice, upon request, all necessary and appropriate documentation with respect to said assets, including consents to forfeiture, quit claim deeds and any and all other documents necessary to deliver good and marketable title to said property. To the extent the assets are no longer within the possession and control or name of the defendant, the defendant agrees that the United States may seek substitute assets within the meaning of 21 U.S.C. § 853.

9.

The defendant hereby expressly waives the right to appeal her conviction and sentence, including any appeal right conferred by Title 18, United States Code, Section 3742, and to challenge the conviction and sentence in any post-conviction proceeding, including a proceeding under Title 28, United States Code, Section 2255, and any modification of sentence pursuant to Title 18, United States Code, Section 3582(c)(2). The defendant, however,

reserves the right to appeal the following: (a) any punishment imposed in excess of the statutory maximum; (b) any punishment that is an upward departure pursuant to the guidelines; and (c) any punishment that is above the guidelines range calculated by the Court. Nothing in this paragraph shall act as a bar to the defendant perfecting any legal remedies she may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel.

10.

The defendant understands that, as a result of this Plea Agreement, the maximum sentence she could receive is twenty (20) years imprisonment and a fine of $250,000 or twice the gross gain or gross loss derived or resulting from the offense, whichever is greater. The Court must also order restitution in accordance with law. In addition, the Court must impose a special assessment of $100, which the defendant agrees to pay at the time of sentencing. The defendant understands that, if the Court imposes a term of imprisonment, she may also receive a term of supervised release after imprisonment of not more than three (3) years. Supervised release is imposed in addition to a sentence of imprisonment, and a violation of the conditions of supervised release can subject the defendant to imprisonment for a term of two (2) years, without credit for any time already served on the term of supervised release. The defendant understands that the Court, while not bound to apply the Sentencing Guidelines, must consult the guidelines and take them into account when sentencing.

11.

The United States and the defendant further agree that if the defendant's offense level prior to the operation of Section 3E1.1(a) of the United States Sentencing Guidelines is sixteen (16) or greater, and if the defendant complies with the provisions of Section 3E1.1(b) and all

terms of this Plea Agreement, including but not limited to the timely submission of the financial statement referenced in paragraph 7, the United States will move, pursuant to Section 3E1.1(b), to decrease the defendant's offense level by one additional level.

12.

The United States and the defendant stipulate, pursuant to Section 6B1.4 of the United States Sentencing Guidelines, to the following:

a. That the proper calculation of loss based on the defendant's participation in the scheme and artifice is more than $1,000,000 but not more than $2,500,000, pursuant to Section 2B1.1(b)(1)(I);

b. That the defendant's offense involved the use of sophisticated means, pursuant to Section 2B1.1(b)(10)(C);

c. That the defendant's offense involved an abuse of a position of trust, pursuant to Section 3B1.3;

d. That the defendant was an organizer, leader, manager, or supervisor in a criminal activity involving less than five participants, pursuant to Section 3B1.1(c); and

e. That the Defendant's offense of conviction was a Federal health care offense involving a Government health care program and the loss to the Government health care program was more than $1,000,000, pursuant to Section 2B1.1(b)(7).

The defendant understands that the Court is not bound by this stipulation.

13.

The United States and the defendant stipulate, for purposes of Rule 11(b)(3) of the Federal Rules of Criminal Procedure and pursuant to Section 6B1.4 of the United States Sentencing Guidelines, to the following factual basis:

Throughout the relevant period, Extraordinary Care Network, Inc. ("Extraordinary Care"), headquartered in Baton Rouge, Louisiana, contracted with the State of Louisiana, Department of Health and Hospitals (Medicaid) to provide attendant care services to qualifying low-income residents in the greater Baton Rouge area, through the New Opportunities Waiver Program. Upon providing these services, Extraordinary Care electronically submitted claims for reimbursement to Medicaid through Medicaid's fiscal intermediary, Molina Medicaid Solutions ("Molina"). Molina received the claims for reimbursement on its server located in Baton Rouge, then electronically transmitted the claims for processing to its computer mainframe located in Salt Lake City, Utah. If the claims submitted by Extraordinary Care were deemed to have met previously established requirements, Molina authorized the Louisiana Treasury to disburse funds to Extraordinary Care electronically.

Extraordinary Care employed several office workers and numerous caretakers, also known as Direct Service Workers, who provided attendant care services to qualified recipients. Such services included direct support and assistance to the recipient in the home or community, allowing the recipient to achieve or maintain increased independence, enhanced family functioning, inclusion in the community, or to relieve the primary caregiver.

BARBARA A. SADLER owned, operated, and managed Extraordinary Care; on occasion, SADLER provided attendant care services to clients when other Direct Service Workers were unavailable.

Beginning in or around January 2006 and continuing through in or around March 2013, SADLER, and her co-conspirators submitted fraudulent claims to Medicaid as if they had provided one-on-one attendant care services to individual NOW program recipients, when such services were not in fact provided as represented. In support of such fraudulent claims, SADLER and her co-conspirators would falsify and direct other employees to falsify recipients' progress notes to make it appear as though SADLER, her co-conspirators, and other unwitting Direct Service Workers, had provided one-on-one care to particular recipients. Such notes included a description of tasks that were purportedly performed with particular recipients and the recipients' responses and affect.

Among other things, SADLER and her co-conspirators would type the fabricated progress notes on Extraordinary Care's computer, and "clone" or copy and paste notes from one recipient's attendant care session to another's, as if the second recipient had received the care as represented. SADLER and her co-conspirators would then sign her own name, or forge the signatures of her co-conspirators or other unwitting Direct Service Workers, attesting to those services as provided.

Based on the false documentation created by SADLER, SADLER and her co-conspirators would submit claims to Medicaid for reimbursement for services that had not been provided as claimed. For instance, SADLER fabricated and signed progress notes indicating an unwitting DSW had provided attendant care services to recipient Q.L. on October 15, 2008. Claim number 8296156127000 was electronically paid by Medicaid on October 28, 2008 for the services purportedly provided by the unwitting DSW to Q.L. on October 28, 2008 when, in fact, the unwitting DSW had not been present on such date with Q.L. and no such services had been provided by her. Medicaid processed this claim using interstate wire transmissions.

From January 2006 until March of 2013, SADLER and her co-conspirators, through Extraordinary Care Network, Inc., submitted approximately $23.3 million in claims to Medicaid and were paid approximately $20 million.

The defendant understands that the Court is not bound by this stipulation.

14.

Pursuant to Rule 11(c)(3)(A) and 11(c)(5), Federal Rules of Criminal Procedure, the Court may accept or reject this Plea Agreement or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the Presentence Report. If the Court rejects the Plea Agreement, the Court, on the record, will so inform the defendant and advise the defendant that the Court is not bound by the Plea Agreement. The Court will give the defendant an opportunity to withdraw the plea and will advise the defendant that, if the plea is

not withdrawn, the disposition of the case may be less favorable to the defendant than contemplated by the Plea Agreement.

15.

The defendant understands and acknowledges that as a result of this guilty plea, the defendant will be excluded from Medicare, Medicaid, and all Federal health care programs. The defendant agrees to complete all necessary documents provided by any department or agency of the federal government, including, but not limited to, the United States Department of Health and Human Services, to effectuate this exclusion within 60 days of receiving the documents. This exclusion will not affect the defendant's right to apply for and receive benefits as a beneficiary under any Federal health care program, including Medicare and Medicaid. The defendant understands that this Plea Agreement, including this Paragraph 15, is not intended to affect or control any actions, including any exclusions or disciplinary actions, taken by other agencies, state or federal.

16.

The defendant acknowledges that there is no agreement with the United States as to the actual sentence that will be imposed by the Court as a result of this Plea Agreement and acknowledges that no promises or assurances have been made to her as to what the sentence will be. The defendant acknowledges that the terms herein constitute the entire agreement and that no other promises or inducements have been made. The defendant acknowledges that she has not been threatened, intimidated, or coerced in any manner.

17.

The defendant acknowledges that this Plea Agreement has been entered into knowingly, voluntarily, and with the advice of counsel, and that she fully understands the agreement. The defendant has no objection to the legal representation she has received.

This Plea Agreement is entered into this 19th day of November, 2015, in Baton Rouge, Louisiana.

_____  
BARBARA A. SADLER  
DEFENDANT  

_____  
LANCE UNGLESBY  
LOGAN GREENBERG  
Counsel for the Defendant  
246 Napoleon St.  
Baton Rouge, LA 70802  
Telephone: (225) 387-0120  

UNITED STATES OF AMERICA, by

_____  
J. WALTER GREEN, LBN 27812  
UNITED STATES ATTORNEY  

_____  
SHUBHRA SHIVPURI, NYBN 4694295  
DUSTIN M. DAVIS, LBN 28012  
Trial Attorneys  
United States Department of Justice  
Criminal Division, Fraud Section  
Telephone: (202) 335-5643